IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable R. Brooke Jackson

Civil Action No. 11-cv-0055-RBJ-MJW

LINDA BIGLEY,

     Plaintiff,

v.

CIBER, INC., LONG TERM DISABILITY COVERAGE FOR: CLASS I: ALL SALARIED
AND ADMINISTRATIVE EMPLOYEES WHO WORK 40 HOURS PER WEEK, AND
CLASS II: ALL OTHER SALARIED AND ADMINSTRATIVE QUALIFIED FULL-TIME
EMPLOYEES WHO WORK 32-40 HOURS PER WEEK,

     Defendant.

---

## ORDER

---

This case arises under the Employee Retirement Income Security Act of 1974

("ERISA"), 29 U.S.C. § 1001 et seq.  It is a review of the record of the defendant's denial of

long term disability benefits under the terms of an insurance policy issued to the plaintiff, Linda

Bigley, through her employer, CIBER, Inc.  The briefing was completed with the expiration of

time for plaintiff to file a reply brief in March 2012.  The Court apologizes to the parties and

counsel for the delay.

**Facts**

*The Plan*

CIBER, Inc. is a Colorado-based company that offers its employees long term disability

benefits under a plan (Plan) administered by a third party, The Prudential Insurance Company of

America (Prudential).  Under the terms of the Plan a covered employee is entitled to benefits if

he or she becomes disabled.  A claimant is disabled when Prudential determines that:

you are unable to perform the **material and substantial duties** of your **regular occupation** due to your **sickness** or **injury**; and

you have a 20% or more loss in your **indexed monthly earnings** due to that **sickness** or **injury**.

After 24 months of payments, you are disabled when Prudential determines that due to the same sickness of injury, you are unable to perform the duties of any **gainful occupation** for which you are reasonably fitted by education, training or experience.

R. 11. (emphasis original).

Further, Prudential limited the benefits payment period to twenty-four months for disability due to mental illness.  R. 19.  The Plan defines mental illness as "a psychiatric or psychological condition regardless of cause.  Mental illness includes . . . depression, manic depressive or bipolar illness . . . ."  R. 20.

*Ms. Bigley's Claim*

Ms. Bigley first applied for long-term disability benefits in May 2002 because of bipolar mood disorder.  R. 37-50.  Initially, Ms. Bigley's application was denied, R. 51, but in September 2002, Prudential determined that Ms. Bigley was disabled under the terms of the Plan and awarded her benefits payable from May 2002.  R. 55.  In January 2004 Ms. Bigley was notified that because her benefits were based on mental illness, there was a twenty-four month limitation, and that her benefits would terminate on May 6, 2004.  R. 59.

On June 17, 2004 Ms. Bigley appealed Prudential's decision to terminate her benefits. R. 832.  Ms. Bigley now argued that she was disabled because of both mental illness and physical illness or injury.  *Id.*  Ms. Bigley submitted medical records showing a spine/disc injury. R. 109.  Prudential contacted Ms. Bigley's primary care physician, Dr. Johnson.  R. 413.  Dr. Johnson opined that Ms. Bigley could not work any job that required sitting or standing for more than approximately ten minutes without an adjustment in body position, posture, or location.  *Id.* A vocational counselor determined that Ms. Bigley could perform her duties as a systems

programmer within the restrictions that Dr. Johnson recommended.  R. 98.  Based upon this

assessment, Prudential determined that Ms. Bigley was not disabled.  R. 99.

Ms. Bigley again appealed the decision, R. 105, and was again denied, R. 106.  On

October 24, 2005 Ms. Bigley submitted a final appeal.  R. 334-39.  In that appeal, Ms. Bigley

explained that in addition to bipolar disorder, she also suffered from "long term degenerative

disc disease, mid thoracic dysfunction, chronic mechanical neck pain secondary decreased

mobility at C2-5, degenerative disc desiccation at L3-3, a bulging disc at L4-5 with facet

osteoarthritis and bilateral degenerative facet arthropathy at L5-S1."  R. 335.  Because of this,

Ms. Bigley claimed that she could only tolerate sitting or standing for 30 minutes at a time for

one to two hours per day.  *Id.*  Ms. Bigley concluded that she "does not have the endurance to

perform a job in any capacity."  *Id.*

In response to this appeal, Prudential sought the opinion of Dr. R. David Bauer, a board

certified orthopedic surgeon.  R. 213-217.  Dr. Bauer reviewed Ms. Bigley's medical records and

provided his opinion on her ability to work.  *Id.*  Dr. Bauer concluded that "[a]lthough not

significant, the claimant has a functional impairment based upon her degenerative disc disease."

R. 216.  He concluded that Ms. Bigley would need the ability to alternate between sitting and

standing several times during the day.  *Id.*  He opined that she should be able to sit for 45-60

minutes and then be able to walk around and restore her ability to sit within 5-10 minutes.  *Id.*

In a letter dated December 27, 2005, Prudential informed Ms. Bigley that based on Dr.

Bauer's opinion, it was upholding its previous decision to deny her claim for benefits.  R. 126-

129.  Ms. Bigley now appeals Prudential's decision.  To support her appeal, Ms. Bigley cites to

the opinions of several medical care providers in the record:

Dr. Warren T. Johnson

Dr. Johnson, Ms. Bigley's primary care physician, noted that Ms. Bigley suffered from
ongoing back and leg pain.  R. 414.  He opined that Ms. Bigley could not do any job that
required sitting or standing for more than ten minutes without the ability to adjust body position,
posture, or location. R. 413.

Jeffrey Gappa, D.C.

Ms. Bigley was seen by a chiropractor, Dr. Gappa, beginning in 1998.  R. 267.  In 2005
Dr. Gappa completed a report describing Ms. Bigley's injuries, treatment, and restrictions.  R.
267-69.   Dr. Grappa summarized that Ms. Bigley's primary complaint was pain in her neck, low
back, and left leg consistent with insidious degenerative disc and joint disease with resultant left
radiculopathy complicated by bipolar disease.  R. 268.  Because of this, Dr. Grappa opined that
Ms. Bigley would probably have difficulty sitting or standing in any one position for greater than
thirty minutes and would struggle with activities of daily living that require bending, lifting, or
twisting at the waist and hips.  R.269. When asked whether Ms. Bigley could work a seven hour
work day, Dr. Grappa did not provide an opinion, but rather reiterated that she should not do
work activities that parallel the limitations that he described.  R. 269.

Dr. George A. Leimbach

Ms. Bigley saw Dr. Leimbach in February 2005 for a transforaminal epidural steroid
injection to treat lower back pain with radiculitis.  R. 289.  Dr. Leimbach noted that before the
procedure Ms. Bigley's pain was 9 out of 10 and after the procedure it was 5 out of 10.

<u>Dr. Douglas W. Beard</u>

In October 2003 Dr. Beard evaluated and completed a report about Ms. Bigley.  Dr.

Beard noted that Ms. Bigley had undergone diagnostic studies, including a lumbar MRI scan in

September 2003 which showed evidence of disk desiccation present at the L3-4 motion segment

with minimal narrowing and disk space narrowing and modic endplate changes at L4-5.  R. 295.

Ms. Bigley returned to Dr. Beard's office after undergoing treatment with Dr. Leimbach and

reported that "overall things are markedly improved," but that she continued to experience low

back pain.  R. 293.

<u>Body Mechanix Physical Therapy</u>

Ms. Bigley went to Body Mechanix Physical Therapy for a number of months in 2005

and saw Raymond B. Vigil, PT.  R. 306.  In a letter written to Ms. Bigley's attorney, Mr. Vigil

opined that he agreed "with Ms. Bigley that she would not be able to work as a system

programmer in any capacity due to pain provocation with sitting, standing, bending and twisting.

Her disabling psychological diagnosis was certainly active at this point in time and her back and

leg pain only serve to compound her inability to be gainfully employed."  R. 306.

**Objections to the Administrative Record**

In her opening brief, Ms. Bigley objects to the administrative record, arguing that it has

not been authenticated and that it contains hearsay.  The Court addressed this argument in its

Order on Pending Motions [docket #75], where it explained that "[t]he administrative record is

what it is."  Order on Pending Motions 10.  This Court concluded that

> [t]he rules of evidence do not apply to what the plan or third party administrator may
> consider in evaluating a long term disability claim.  If they rely on unreliable evidence,
> then that could and should be considered by the reviewing court in making a
> determination as to whether to affirm or reverse the decision of the administrators.
> However, the Court does not exclude evidence that is part of the record considered

below, nor certainly would the record be restricted to those documents to which plaintiff consents.

*Id.*  In response to Ms. Bigley's concerns, the defendant submitted affidavits verifying the authenticity of the record.  Forman Aff.; Plisko Aff.  [#67-2, 67-3].  Accordingly, Ms. Bigley's objections to the administrative record are denied.

### Standard of Review

"A court reviewing a challenge to a denial of employee benefits under 29 U.S.C. § 1132(a)(1)(B) applies an 'arbitrary and capricious' standard to a plan administrator's actions if the plan grants the administrator discretionary authority to determine eligibility for benefits or to construe the plan's terms."  *Kimber v. Thiokol Corp.*, 196 F.3d 1092, 1097 (10th Cir. 1999) (quoting *Charter Canyon Treatment Ctr. v. Pool Co.*, 153 F.3d 1132, 1135 (10th Cir.1998)). This Plan states that the claimant is disabled "when <u>Prudential determines</u> that: you are unable to perform the material and substantial duties of your regular occupation due to your sickness or injury; and you have a 20% or more loss in your indexed monthly earnings due to sickness or injury."  R. 11.  (emphasis added).  The language "Prudential determines" confers Prudential with discretionary authority to determine eligibility for benefits.  *McGraw v. Prudential Ins. Co. of Am.*, 137 f.3d 1253, 1259 (10th Cir. 1998).  Accordingly, this Court reviews Prudential's decision to deny Ms. Bigley benefits under the arbitrary and capricious standard.

Courts have acknowledged that sometimes, a "conflict of interest can arise between a plan administrator's duty to act 'solely in the interest of the participants and beneficiaries' of the plan . . . and his self interest or loyalty to his employer."  *Kimber* 196 F.3d at 1097.  When there is a conflict of interest, the standard remains arbitrary and capricious but the amount of deference present may decrease "on a sliding scale in proportion to the extent of conflict present, recognizing the arbitrary and capricious standard is inherently flexible."  *Id.* (quoting *McGraw v.*

*Prudential Ins. Co.*, 137 F.3d 1253, 1258 (10th Cir.1998)).  The plan administrator, Prudential, is a third party-administrator.  Because Ms. Bigley has not offered any evidence to suggest that there is a conflict of interest, the Court applies the "pure" arbitrary and capricious standard.

**Conclusions**

"When reviewing under the arbitrary and capricious standard, 'the Administrator's decision need not be the only logical one nor even the best one.  It need only be sufficiently supported by facts within his knowledge to counter a claim that it was arbitrary or capricious.' … The decision will be upheld unless it is 'not grounded on any reasonable basis.'" *Kimber,* 196 F.3d at 1097 (quoting *Woolsey v. Marion Labs., Inc*., 934 F.2d 1452, 1460 (10th Cir.1991)).

Ms. Bigley does not challenge Prudential's determination that she was only entitled to twenty-four months of benefits for her bi-polar disorder.  Instead, she asserts that Prudential abused its discretion when it determined that her physical ailments did not rise to the level of disability as defined within the plan.  Ms. Bigley points to the opinions of several doctors who opined that Ms. Bigley has serious back and spinal ailments, and she argues that Prudential was wrong in determining that she was able to perform her job duties and therefore not disabled.

Prudential grounded its decision to deny Ms. Bigley benefits on the opinions of Ms. Bigley's primary care physician, Dr. Johnson, and a consultative opinion from Dr. Bauer.  R. 99, 126-129.  Prudential considered the limitations described by both doctors and, after consulting with a vocational counselor, determined that Ms. Bigley would be able to perform the functions of her previous work at CIBER as a systems programmer.  R. 98.  Prudential provided Ms. Bigley with a detailed explanation as to why she did not qualify for additional long-term disability benefits under the Plan.  R. 126-129.

This is arguably not the only decision that Prudential could have reasonably made. Based upon the evidence submitted by Ms. Bigley, it is possible that Prudential could have determined that Ms. Bigley was disabled under the terms of the Plan. However, it is not the role of this Court to determine whether Prudential made the best decision. "The reviewing court 'need only assure that the administrator's decision fall[s] somewhere on a continuum of reasonableness-even if on the low end.'" *Kimber*, 196 F.3d at 1098 (quoting *Vega v. Nat'l Life Ins. Serv., Inc.*, 188 F.3d 287, 297 (5th Cir.1999)). The record shows that Prudential's decision was based primarily upon Dr. Bauer's assessment after he had an opportunity to review Ms. Bigley's medical records. Under these circumstances, there is nothing to suggest that Prudential's determination of disability did not fall on the continuum of reasonableness.

Ms. Bigley also argues that Prudential erred when it failed to consider whether Ms. Bigley's need for narcotic pain medication affected her ability to continue working. Ms. Bigley did not raise this issue on any appeal. Relying on *Gaither v. Aetna Life Ins. Co.,* 394 F.3d 792 (10th Cir. 2004), Ms. Bigley argues that the defendant had an obligation to consider her need for narcotics even though she did not raise the issue on appeal. The circumstances in *Gaither* are distinguishable from those before the Court. In *Gaither* the plaintiff was suspended from his job because his employer said his use of narcotic painkillers to control his symptoms from cancer made him unable to perform his job. *Id.* at 794. At the same time, his ERISA plan administrator denied him benefits because it determined that his medical condition did not make him unable to do his job. *Id.* The court determined that the plan administrator had notice that a drug-free workplace was a condition for employment and that the plaintiff relied on narcotics. The court held that as a general rule "nothing in ERISA requires plan administrators to go fishing for evidence favorable to a claim when it has not been brought to their attention that such evidence

8

exists." *Id.* at 805. It further asserted "the narrow principle that fiduciaries cannot shut their eyes to readily available information when the evidence in the record suggests that the information might confirm the beneficiary's theory of entitlement and when they have little or no evidence in the record to refute that theory." *Id.* at 807.

Ms. Bigley asserts only that her "medical records repeatedly state that she is in constant pain and often must take narcotic pain medication to control the pain." Pl.'s Br. at 14-15. Ms. Bigley does not cite to any information in the record that narcotics use would make her unable to perform her work duties. This is not enough to show that Prudential shut its eyes to readily available information that could confirm Ms. Bigley's theory of entitlement.

Finally, defendant requests an award of costs and attorney's fees. The Court may award costs to the prevailing party, here the defendant, pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1. To that extent defendant's request is granted. In ERISA cases, courts may also award a reasonable attorney's fee (and costs) to either party as a matter of discretion. 29 U.S.C. § 1132(g)(1). In exercising its discretion as to whether to award attorney's fees, courts should consider, among other factors,

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to personally satisfy an award of attorney's fees; (3) whether an award of attorney's fees against the opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.

*Gordon v. U.S. Steel Corp.,* 724 F.2d 106, 108 (10th Cir. 1983).

Accordingly, if the defendant wishes to press its request for an award of attorney's fees, it should set an evidentiary hearing concerning the Court's exercise of discretion as to whether a fee award should be made. The Court would consider evidence from both sides both as to its

exercise of discretion and, if appropriate, the necessity and reasonableness of the amount requested.

**Order**

Plaintiff's claim for benefits under ERISA is DENIED.  The Court enters its final written judgment dismissing the case with prejudice.  Defendant is awarded its reasonable costs.  If the defendant wishes to seek a discretionary award of attorney's fees, it should proceed as directed above.

DATED this 9th day of May, 2013.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge